UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ABDULMAJID M. BOUKRAYA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MARKWAYNE MULLIN,[1] Secretary, U.S. | * | Civil Action No. 1:25-cv-10383-IT |
| Department of Homeland Security; KASH | * | |
| PATEL, Director, Federal Bureau of | * | |
| Investigation; KIKA SCOTT, Senior Official | * | |
| Performing the Duties of the Director, U.S. | * | |
| Citizenship & Immigration Services; TERRI | * | |
| A. ROBINSON, Director, USCIS National | * | |
| Benefits Center; and DENIS RIORDAN, | * | |
| N11 District Director, USCIS, Boston, | * | |
| Massachusetts, | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM & ORDER

March 31, 2026

TALWANI, D.J.

Pending before the court is Defendants Markwayne Mullin, Kash Patel, Kika Scott, Terri

A. Robinson, and Dennis Riordan's ("Defendants") Motion to Dismiss for Mootness [Doc. No.

17] Plaintiff Abdulmajid M. Boukraya's Complaint for Writ of Mandamus [Doc. No. 1]

regarding his Form N-400 application for naturalization. Pursuant to Federal Rule of Civil

Procedure 12(b)(1), Defendants seek dismissal of the complaint for mootness where Boukraya's

---

[1] The court substitutes Markwayne Mullin for former Secretary Kristi Noem pursuant to Federal Rule of Civil Procedure 25(d).

citizenship application has now been adjudicated by U.S. Citizenship and Immigration Services ("USCIS"). See Mem. ISO. Mot. to Dismiss 1, 3 [Doc. No. 18].

For the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 17] is GRANTED.

## I.    Background

On February 14, 2001, Boukraya, a citizen and national of Tunisia, lawfully entered the United States "in refugee (RE-6) status." Compl. ¶¶ 8, 10 [Doc. No. 1]. He was granted permanent residency status on April 7, 2003. Id. ¶ 11.

On May 31, 2016, Boukraya applied for naturalization by filing a Form N-400 with USCIS's National Benefits Center. Id. ¶ 12.[2]

As of the filing of his Complaint [Doc. No. 1] on February 14, 2025, USCIS had not yet processed Boukraya's Form N-400. Id. ¶ 14. In the eight-and-a-half years between Boukraya's filing of the Form N-400 and the filing of his Complaint [Doc. No. 1], Boukraya's counsel requested status updates from USCIS at least seven times. Id. ¶ 15. In response to each request, USCIS acknowledged the delay without providing any material information. Id. For instance, in its September 12, 2019 and November 25, 2019 responses, USCIS advised: "Based on your inquiry, we have reviewed the status of your case and found that it remains under active examination. This office acknowledges the completion of your case being outside of the normal processing and realizes the inconvenience it may cause." Id. Similarly, in its response to Boukraya's December 12, 2021 status update request, USCIS advised: "Our records show that

---

[2] Boukraya asserts that he previously applied for naturalization on July 18, 2007. Pl's Opp'n 7 [Doc. No. 19]. USCIS denied Boukraya's application on March 18, 2011. Id. Boukraya challenged the denial on April 7, 2011. Id. Boukraya received no further updates on his initial application. Id.

your Form N-400 is currently pending adjudication. We regret that we are unable to provide you with a completion date at this time." Id.

In his Complaint [Doc. No. 1], Boukraya alleged that USCIS unreasonably delayed processing his naturalization application, thereby violating the agency's statutory obligation under the Administrative Procedure Act (APA), 5 U.S.C. § 555(b), to, "within a reasonable time . . . proceed to conclude a matter presented to it." Id. ¶ 23. Accordingly, Boukraya sought from this court a writ of mandamus compelling USCIS to process his Form N-400, a declaration that USCIS's practices violate duties legally owed to him, and an award of attorney's fees. Id. at 6–7.

On May 8, 2025, Defendants requested a sixty-day extension to respond to the Complaint [Doc. No. 1] "so that USCIS c[ould] continue to process [Boukraya]'s N-400 application, including by interviewing [Boukraya] on May 15, 2025." Mot. for Extension of Time ¶ 4 [Doc. No. 8]. The court allowed the additional time. Elec. Order [Doc. No. 9]; Elec. Order [Doc. No. 11].

USCIS held Boukraya's naturalization interview as scheduled on May 15, 2025. Mem. ISO Mot. to Dismiss Ex. 1, Decl. of Justin W. Merrifield ¶ 3 ("Merrifield Decl.") [Doc. No. 18-1]; Opp'n 8 [Doc. No. 18]. During the interview, the Immigration Services Officer asked questions regarding "Islamic prayers and rituals; the places of worship [Boukraya] attended . . . and the identities of violent individuals who also attended those places." Opp'n 8 [Doc. No. 19]. To substantiate this line of questioning, the Immigration Services Officer "repeatedly referenced an undisclosed 'report' and quoted from unknown out-of-court statements." Id.

On May 29, 2025, USCIS issued Boukraya a Notice of Intent to Deny ("NOID") his Form N-400 and "invited [him] to submit a rebuttal or documentary evidence to overcome the grounds supporting the NOID" within thirty days. Merrifield Decl. ¶ 4 [Doc. No. 18-1]; Opp'n 9

3

[Doc. No. 19]. To adequately refute USCIS's allegation that Boukraya "lack[ed] good moral character," Opp'n 9 n.8 [Doc. No. 19], Boukraya filed multiple requests to gain access to the information to which the Immigration Services Officer referred during the naturalization hearing and cited in the NOID. See id. at 8–9. USCIS denied these requests. Id. at 9–10.

Boukraya submitted his response to the NOID on July 7, 2025. Mem. ISO Mot. to Dismiss 2 [Doc. No. 18]; Merrifield Decl. ¶ 5 [Doc. No. 18-1]. On July 8, 2025, USCIS issued a Notice of Decision to Boukraya, denying his Form N-400 application for naturalization. See Merrifield Decl. ¶ 6 [Doc. No. 18-1]; Opp'n 10 [Doc. No. 19]. The Notice "advised Mr. Boukraya of his right to submit a request for a hearing on Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, within 30 calendar days of service of the decision (33 days if the decision is mailed)." Merrifield Decl. ¶ 7 [Doc. No. 18-1].

On August 8, 2025, Defendants filed their Motion to Dismiss [Doc. No. 17]. Boukraya's Opposition [Doc. No. 19] followed.

## II.    Standard of Review

A motion to dismiss for mootness is a challenge to the court's subject matter jurisdiction. See Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (evaluating mootness as an issue of subject matter jurisdiction). Federal courts are courts of limited jurisdiction, and, accordingly, federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

Insofar as Defendants seek dismissal on mootness grounds, the court may evaluate "change[s] in the fact situation underlying the dispute, making relief now pointless." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004); see Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 17 (1st Cir. 2003) ("Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief.").

### III.    Discussion

Defendants seek dismissal where, "because USCIS has performed the action [Boukraya] sought by completing the processing of [his] N-400 application," there is now "no case or controversy . . . under Article III of the Constitution." Mem. ISO Mot. to Dismiss 3 [Doc. No. 18]. Plaintiff opposes the motion, arguing that Defendants are improperly withholding documentation supporting the claimed derogatory information on which the denial of citizenship was based. Opp'n 6 [Doc. No. 19]. Plaintiff also argues that the court should issue a declaratory judgment "that Defendant violated its legal duties under the Immigration and Nationality Act ('INA') and related statutes and regulations, including by unreasonably delaying adjudication and failing to provide due process in the naturalization process." Id. at 7.

### A.    *Injunctive Relief for Processing the Form N-400*

#### 1.    Mootness

When a case becomes moot, "a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting D.H.L. Assocs., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999)). "Another way of putting this is that a case is moot when the

court cannot give any 'effectual relief' to the potentially prevailing party." Horizon Bank &

Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (quoting Church of Scientology of

Cal. v. United States, 506 U.S. 9, 12 (1992)); see Oakville Dev. Corp. v. Fed. Deposit Ins. Corp.,

986 F.2d 611, 613 (1st Cir. 1993) (issue no longer live when "the act sought to be enjoined

actually transpires").

Here, Defendants contend that, because USCIS has completed its processing of

Boukraya's Form N-400 and issued a decision in July 2025, the issue for which Boukraya sought

injunctive relief in this court—namely, "complet[ion of] the processing of [his] N-400

application within 60 days" of an order issued by the court, see Compl. 6 [Doc. No. 1]—is no

longer "live." Mem. ISO Mot. to Dismiss 4 [Doc. No. 18]. Defendants' characterization aligns

with several decisions concerning mandamus petitions filed against USCIS. See, e.g., Jean v.

Garland, 636 F. Supp. 3d 221, 223 (D. Mass. 2022) (dismissing case as moot where USCIS

rendered decisions on three of plaintiffs' five immigration applications and issued Requests for

Evidence for the remaining two, to which plaintiffs had not responded); Dy v. Blinken, 703 F.

Supp. 3d 314, 317 (D. Mass. 2023) (holding plaintiffs' claim was moot where USCIS performed

the requested review of petitioner's visa application); Mem. of Decision and Order on Def.'s

Mot. to Dismiss 3, 5, Phath v. Blinken, No. 1:22-cv-11019-JGD (D. Mass. Nov. 15, 2022), Dkt.

No. 17 (dismissing case as moot because USCIS issued a decision denying plaintiff's Form I-130

visa application one month after complaint to compel decision was filed in federal court); Elec.

Order, Chhoum v. Blinken, No. 1:22-cv-10499-DJC, (D. Mass. Oct. 20, 2022), Dkt. No. 24

(similar). Courts in other jurisdictions have followed a similar practice. See, e.g., Almakalani v.

McAleenan, 527 F. Supp. 3d 205, 222 (E.D.N.Y. 2021) ("This court has specifically held that

when a plaintiff asks the court to compel USCIS to adjudicate an application that is no longer

pending at the time of the court's review, that claim is moot and USCIS's adjudication of the application divests the court of subject matter jurisdiction."); Markandu v. Thompson, No. CV 07-4538 (JLL), 2008 WL 11510675, at *3 (D.N.J. June 11, 2008) ("Federal courts have found that claims are moot . . . in immigration mandamus actions to compel action by an agency once the agency begins to spin its bureaucratic cogs toward decision.").

Boukraya argues that a controversy still exists insofar as Defendants failed to perform their statutory duty under the APA, 5 U.S.C. § 555(b), to process Boukraya's Form N-400 "within a reasonable time." Opp'n 19 [Doc. No. 19]. But, where USCIS has now formally rendered its decision on Boukraya's Form N-400, any order from this court directing USCIS to "complete the processing of Plaintiff's N-400 application[,]" Compl. 6 [Doc. No. 1], and to do so within a reasonable time, would not "provide meaningful relief to the allegedly aggrieved party[.]" Am. C.L. Union of Mass., 705 F.3d at 53.

2. Voluntary Cessation Exception

Boukraya asserts that the voluntary cessation exception is applicable here because "it is not 'absolutely clear' that USCIS's unreasonable delays and violation of its statutory duties to [Boukraya] will cease" and "USCIS's cessation of its challenged activity is directly related to the existence of this litigation." Opp'n 16–17 [Doc. No. 19].

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). The voluntary cessation exception ensures a defendant cannot "evade judicial review . . . by temporarily altering questionable behavior." Am. C.L. Union of Mass., 705 F.3d at 54 (quoting City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001)). In line with this policy, the exception "'can apply when a

7

defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated' after the suit's 'dismissal.'" Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (quoting Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)); see KG Urban Enters., LLC v. Patrick, 969 F. Supp. 2d 52, 57 (D. Mass. 2013) (explaining that the voluntary cessation exception applied where it was "clear that defendants initiated the commercial application process [at issue] . . . out of concern for the instant litigation").

Resolving all inferences in Boukraya's favor, as the court must do at this stage, the facts as alleged give rise to an inference that the filing of Boukraya's Complaint [Doc. No. 1] in February 2025 motivated Defendants to process the pending Form N-400. For example, after a multi-year delay in acting on Boukraya's Form N-400, USCIS interviewed Boukraya within three months of the Complaint [Doc. No. 1] having been filed, issued a NOID fourteen days later, accepted Boukraya's rebuttal and response to the NOID on July 7, 2025, and rendered its final decision the next day. See Merrifield Decl. ¶¶ 3–6 [Doc. No. 18-1]. Defendants do not offer an independent justification or explanation of this timeline, and, even if they did so, "[t]he existence of an independent reason" may be "insufficient to demonstrate that the decision was . . . unrelated to the litigation." KG Urban Enters., LLC, 969 F. Supp. 2d at 57.

Notwithstanding the apparent relationship between Defendants' processing of the Form N-400 and Boukraya's initiation of this litigation, however, where the wrongful behavior alleged in the complaint was Defendants' failure to process Form N-400, see Compl. ¶¶ 3–4, 21, 26–27 [Doc. No. 1], and where Defendants have now completed that processing and rendered a final decision, Defendants have met their "formidable burden" of showing that the allegedly wrongful behavior could not reasonably be expected to reoccur. Friends of the Earth, 528 U.S. at 190.

8

Boukraya's reliance on this court's decision in Al Jaber v. Sessions, No. 1:17-cv-12520-IT, 2018 WL 11484075, at *2 (D. Mass. Aug. 17, 2018), is misplaced. See Opp'n 16–17 [Doc. No. 19]. In Al Jaber, the petitioner, who was detained by U.S. Immigration and Customs Enforcement ("ICE"), sought a writ of habeas corpus to be released or granted a bond hearing. Al Jaber, 2018 WL 11484075, at *1–2. In light of the petition, the respondents released the petitioner from custody and claimed that their voluntary conduct rendered the habeas case moot. Id. Where the respondents relied solely on a signed declaration "devoid of any information" as to why ICE released the petitioner or why ICE would not rearrest him, the court determined that ICE failed to demonstrate that the wrongful arrests "could not reasonably be expected to recur." Id. (citing Friends of the Earth, 528 U.S. at 190). Accordingly, the court found that respondents had not met their burden to avoid application of the voluntary cessation exception. Id. at *2–3.

The finality of the administrative process in the present litigation differs from the arrest in Al Jaber. Unlike in Al Jaber, where there was no identifiable barrier to ICE repeatedly detaining the petitioner on the same or similar charges, it is unclear how USCIS could continue to delay the processing of Boukraya's Form N-400, now that that adjudication has occurred.

Boukraya also argues that USCIS could continue "to delay . . . any subsequent administrative hearings." Opp'n 18 [Doc. No. 19]. But, where USCIS has already rendered a final decision on Boukraya's Form N-400, "[a]ny further action on the part of USCIS will be based on a different record[,]" Mem. of Decision and Order on Def's Mot. to Dismiss 7, Phath v. Blinken, No. 1:22-cv-11019-JGD (D. Mass. Nov. 15, 2022), Dkt. No. 17; see id. at 6–7 (explaining that the voluntary cessation exception is inapplicable where USCIS already issued a final adjudication). Other courts have similarly declined to apply the voluntary cessation exception where USCIS has already acted and rendered a decision on an immigration

9

application. See, e.g., Dy, 703 F. Supp. 3d at 317 (refusing to apply the voluntary cessation exception because "plaintiffs have provided no reason to believe that USCIS could somehow reverse its decision"); Almakalani, 527 F. Supp. 3d at 224 ("Defendants' adjudication of Plaintiffs' petitions is final . . . and thus they cannot resume the challenged conduct.").

Thus, the voluntary cessation exception does not apply in the present litigation.

### 3. Inspection of the Record

Now that Defendants have processed Boukraya's Form N-400, Boukraya additionally claims that USCIS failed to follow a federal regulation, 8 C.F.R. § 103.2(b)(16), under which applicants "shall be permitted to inspect the record . . . which constitutes the basis for the decision." See Opp'n 12–15 [Doc. No. 19]. The regulation also requires that applicants be "offered an opportunity to rebut [derogatory] information." 8 C.F.R. § 103.2(b)(16)(i).

The court lacks jurisdiction to adjudicate this new claim. After receiving the denial of his Form N-400 on August 8, 2025, Boukraya had the option to file a Form N-336 requesting a hearing "before an immigration officer[.]" 8 U.S.C. § 1447(a); see Mem. ISO. Mot. to Dismiss 3 [Doc. No. 18]; Joseph v. Cuccinelli, No. 1:20-CV-1315-GHW, 2021 WL 5087925, at *3 (S.D.N.Y. Nov. 2, 2021), judgment entered, No. 1:20-CV-1315-GHW, 2021 WL 5112934 (S.D.N.Y. Nov. 3, 2021) (explaining that the Form N-336 functions as an "administrative appeal"). If Boukraya has elected that option, "after a hearing before an immigration officer under section 1447(a)" has taken place, a federal district court may review the denial of a naturalization application. 8 U.S.C. § 1421(c); see 8 C.F.R. § 336.9(d). In that context, the court could consider whether USCIS followed federal regulations. But where nothing in the record demonstrates that Boukraya has sought a review hearing before an immigration officer, the court cannot entertain a review of the denial of his Form N-400. See, e.g., Gonzalez v. U.S. Citizenship & Immigr. Servs., No. 1:21-cv-10286-FDS, 2022 WL 658658, at *3 (D. Mass. Mar.

10

4, 2022) (holding that the district court did not have subject matter jurisdiction over plaintiff's request to appeal his naturalization denial because plaintiff did not have a "subsequent hearing before an immigration officer"); see also Jackson v. Homeland Sec. Sec'y, 772 Fed. App'x. 858, 859 (11th Cir. 2019) (holding that the district court lacked jurisdiction to hear a complaint regarding naturalization application denial because the plaintiff "did not exhaust his administrative remedies as required by the statute"); Joseph, 2021 WL 5087925, at *3–4 (explaining that "[b]ecause Mr. Joseph did not file a Form N-336 following USCIS's latest denial of his Form N-400 . . . the Court lacks jurisdiction to consider his petition").

Boukraya nevertheless argues that relief should be granted because he faces a violation of due process, analogous to the circumstances of Zerezghi v. U.S. Citizenship & Immigration Service, 955 F.3d 802 (9th Cir. 2020). See id. at 811, 813 (explaining that USCIS's failure to provide "crucial details" or "list specific documents" to explain why they intended to deny an immigration petition violated due process); Opp'n 13–14 [Doc. No. 19]. Unlike Boukraya, however, the Zerezghi plaintiffs had already exhausted their available administrative remedies by appealing the denial of their permanent residency application to the Board of Immigration Appeals. 955 F.3d at 804.

Boukraya also cites Lopez v. Ezell, 716 F. Supp. 443 (S.D. Cal. 1989), to support his contention that USCIS violated his due process rights by denying access to the derogatory information purportedly used to render the decision on his Form N-400. Opp'n 14–15 [Doc. No. 19]. In Lopez, the plaintiffs claimed that border agents' practice of questioning immigrants with Special Agricultural Worker ("SAW") applications interfered with the "exclusive right" of the Legalization Office of the Immigration and Naturalization Service to make a final decision on SAW applicants. Lopez, 716 F. Supp. at 446. The court ultimately disagreed and, in dicta,

explained that the plaintiffs' access to "inspect and contradict all information adverse" meant their due process rights were satisfied. Id. But, again, where the court does not have subject matter jurisdiction over the present dispute for the reasons described supra, and where Boukraya's Complaint [Doc. No. 1] only sought an order compelling USCIS to act on his petition, Lopez does not change the outcome here.

B.    *Other Relief Requested*

Defendants also contend that Boukraya's request for declaratory relief is now moot. Mem. ISO. Mot. to Dismiss 6 [Doc. No. 18]. For declaratory relief to survive a challenge of mootness, "the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.'" Am. C.L. Union of Mass., 705 F.3d at 53–54 (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). Where no live controversy exists in this case, Boukraya's plea for declaratory relief is likewise moot.

Boukraya similarly may not recover attorney's fees in the present case. "It is well established that an interest in attorney's fees is . . . insufficient to create an Article III case or controversy." Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 193 (1st. Cir. 2022) (quotations omitted) (citation omitted). Accordingly, where Boukraya's other claims for relief are moot, his request for attorney's fees is not cognizable.

IV.    **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss for Mootness [Doc. No. 17] is GRANTED. Boukraya's Complaint for Writ of Mandamus [Doc. No. 1] is DISMISSED.

IT IS SO ORDERED.

March 31, 2026                              /s/ Indira Talwani
                                           United States District Judge

12